LIQUIFIN AKTIENGESELLSCHAFT, Plaintiff,

v.

Joseph P. BRENNAN, Individually and as City Sheriff of the City of New York, and the City of New York, Defendants,

and

Louis J. Lefkowitz, Attorney General of the State of New York, Intervenor.

No. 74 Civ. 767 (JMC).

United States District Court, S. D. New York.

Feb. 14, 1978.

Mudge, Rose, Guthrie & Alexander, New York City (William P. Laino, Donald J. Zoeller and Vincent C. Alexander, New York City, of counsel), for plaintiff.

Paul Weinstein, New York City, for Joseph P. Brennan, defendant and Sheriff of the City of New York.

W. Bernard Richland, Corp. Counsel, New York City (Philip Agree and Michael McLoughlin, New York City, of counsel), for defendant The City of New York.

A. Seth Greenwald, New York City, for intervenor Louis J. Lefkowitz.

## OPINION

CANNELLA, District Judge:

After a trial on stipulated facts, judgment is granted in favor of the defendants and intervenor, and the complaint is dismissed.

This case tests the constitutionality of New York State's poundage fees as applied to a nonresident corporation that obtained a discharge of an attachment order in New York City.

Pursuant to section 8012(b) of the New York Civil Practice Law and Rules,

1. A sheriff is entitled, for collecting money by virtue of . . . an order of attachment . . . to poundage of, in the counties within the city of New York, five per cent of the sum collected and in all other counties, five per cent upon the first two hundred fifty thousand dollars collected, and three per cent upon the residue of the sum collected.

. . . . .

3. Where a settlement is made, either before or after judgment, after a levy by virtue of an order of attachment, the sheriff is entitled to poundage upon the value of the property levied upon, not exceeding the sum at which the settlement is made. Where an order of attachment is vacated or set aside, the sheriff is entitled to poundage upon the value of the property levied upon, not exceeding the amount specified in the order of attachment, and the court may order the party at whose instance the order of attachment was granted to pay the same to the sheriff. Where an order of attachment is otherwise discharged by order of the court, the sheriff is entitled to the same poundage, to be paid by the party at whose instance the order of attachment is discharged, and the sheriff is entitled to retain the property levied upon until the poundage is paid. The maximum amount upon which poundage shall be computed, if such a settlement is made or the order of attachment is vacated or set aside, is one million dollars.

The complaint [1] contains basically three claims: (1) that the $75,625 in poundage fees exacted from plaintiff by the sheriff deprived plaintiff of due process as guaranteed by the fourteenth amendment to the United States Constitution and Article 1, Section 6 of the New York State Constitution; (2) that, pursuant to § 8012(b)(3) of

---

1. The complaint referred to throughout this Opinion is the Amended Complaint filed April 25, 1974, which added the City of New York as a defendant.

the New York Civil Practice Laws and Rules, the maximum amount upon which plaintiff's poundage should have been computed is $1,000,000; and (3) that N.Y.C.P.L.R. § 8012(b)(1), which provides for a higher poundage rate in the counties within New York City, contains an arbitrary territorial classification in violation of the equal protection clause of the fourteenth amendment to the United States Constitution. The Court finds these claims to be without merit.

## THE FACTS [2]

On May 31, 1973, plaintiff Liquifin Aktiengesellschaft ["Liquifin"] [3] published a tender offer for shares of the Ronson Corporation ["Ronson"]. Seeking to enjoin the tender offer, Ronson brought suit on June 5, 1973 in the New Jersey federal district court. [4] When Ronson obtained a preliminary injunction on July 5, Liquifin immediately appealed the district court's decision. On January 16, 1974, after trial, the injunction was vacated.

On July 6, 1973, while Liquifin's appeal of the preliminary injunction was pending, Ronson commenced a second action in the New York County Supreme Court by ob-

taining an order of attachment for the sum of $1,500,000 against Liquifin funds on deposit with the Franklin National Bank ["Franklin"] in New York City. The attached $1,500,000 was part of the more than $13,857,410 Liquifin deposited with Franklin in connection with its tender offer to purchase the Ronson shares. The attachment order was delivered to the City Sheriff, New York County Division, and a Deputy Sheriff effectuated a levy on the attached sum by personally serving a copy of the order on an officer of Franklin at 130 Pearl Street in New York City. [5] Franklin, in turn, made the appropriate accounting entries to freeze $1,500,000 of the Liquifin funds there on deposit and held this amount pursuant to the order of attachment and levy.

On July 19, 1973, Liquifin obtained an order discharging the attachment upon presentation of an undertaking. [6] The order required Liquifin to pay the New York City Sheriff "statutory fees and expenses." Findings of Fact agreed upon by the parties ¶ 15, at 4. The Sheriff gave Liquifin a document releasing the monies attached July 6 on the condition that the Sheriff be

---

**2.** The facts consist of forty-seven agreed findings of fact and one controverted finding. The parties disagree as to whether the sheriff's office is a part of the court system. See text *infra,* where the Court resolves this issue in favor of the defendants.

**3.** Liquifin is a corporation organized under the laws of the Principality of Liechtenstein and not licensed to do business in New York.

**4.** Ronson is a corporation organized under the laws of New Jersey.

**5.** 11. Upon the receipt of orders of attachment, including the order of attachment which is the subject of this action, the City Sheriff's office performs the following acts:

    (a) approval of legal sufficiency of order of attachment by Attorney, Law Department, New York County Division;

    (b) receipt of payment of statutory fees at cash register by Senior Clerk;

    (c) filing of priority index cards by Clerk;

    (d) assignment of case by Supervising Deputy to field deputy;

    (e) possible consultations between Supervising Deputy and Under Sheriff in charge;

    (f) field attempt by Deputy Sheriff on order of attachment;

    (g) consultations with the Sheriff;

    (h) preparation and mailing of a letter of demand to the garnishee.

12. The Deputy Sheriff making such levy used public transportation and incurred travel expenses not in excess of $1.00.

13. The City Sheriff did not collect, take into his possession, maintain or deposit in a trust account the said $1,500,000 levied upon.

14. Prior to levying on Liquifin's funds, the City Sheriff received the statutory fees set forth in CPLR § 8011(a)1 in the sum of $20.00, and § 8012(d) in the sum of $5.00, and said sums were paid by Ronson upon delivery of the order of attachment to the Sheriff.

Findings of Fact agreed upon by the parties ¶¶ 11–14, at 3–4.

**6.** Pursuant to statute, the undertaking is required to be "in an amount equal to the value of the property or debt sought to be discharged . . . ." N.Y.C.P.L.R. § 6222 (McKinney 1963).

paid the sum of $75,625. The $75,625 consisted of a poundage fee of $75,000 calculated at 5% of the value of the property levied upon ($1,500,000), N.Y.C.P.L.R., § 8012(b)(3), and an additional $625 calculated as 5% of the interest on $1,500,000.

On a petition filed by Liquifin, the New York State court action was removed to the United States District Court for the Southern District of New York on September 19, 1973. This action, entitled *Ronson Corporation v. Liquifin Aktiengesellschaft,* 375 F.Supp. 628, was subsequently settled between the parties.

On November 16, 1973, Liquifin paid to the New York City Sheriff the sum of $75,625, pursuant to the terms of the Sheriff's release dated July 19, 1973. As required by law, the Sheriff subsequently transmitted this sum to the City of New York to be deposited in a general fund from which all City expenses are paid.

On February 15, 1974 Liquifin instituted the instant action against New York City Sheriff Joseph E. Brennan, seeking the return of the $75,625 in statutory fees paid to obtain a discharge of the $1,500,000 attachment.[7]

## DISCUSSION

The nature of Liquifin's claims merits a brief sketch of the role of the sheriff, both historically at common law and at present by statute.

◼ In discussing the status, duties and powers of the sheriff, the Appellate Division of the Supreme Court stated:

The sheriff is an elected county officer. County Law § 180. He is charged with the care and maintenance of the County Jail and its inmates. He serves the court's process and executes its mandates. He is, in effect, an arm of the court. As a matter of historical development, it may be noted that originally the sheriff, as a direct representative of the crown or sovereign, performed these and other services on a fee or commission basis. He personally was expressly charged with all the duties and responsibilities of the office. He was "identical, in contemplation of law, with all his officers, and is [was] civilly and directly responsible for their acts, defaults, torts, extortions or other misconduct, whether it be willful or inadvertent, in the course of the execution of their duties." *Matter of Flaherty v. Milliken,* 193 N.Y. 564, 567, 86 N.E. 558, 559; *Matter of Grifenhagen v. Ordway,* 218 N.Y. 451, 113 N.E. 516.

*Enstrom v. City of New York,* 258 App.Div. 672, 675, 17 N.Y.S.2d 964, 967 (2d Dep't 1940). New York decisions recognize that the sheriff is the principal civil enforcement officer of the court. *See, e. g., Hanley v. City of New York,* 250 App.Div. 552, 553, 295 N.Y.S. 1002, 1004 (1st Dep't), *aff'd per curiam,* 275 N.Y. 482, 11 N.E.2d 308 (1937), wherein the court noted the sheriff's "classifi[cation] as a state officer and a part of the state judicial system as far back as the Revised Statutes of 1829 . . . ." *See* N.Y. Judiciary Law § 400 *et seq.* (McKinney 1968 & McKinney Cum.Supp.1977–1978).

◼ The present statute codifies the sheriff's common law function "as an officer of the court and conservator of the peace within the county."[8] N.Y. County Law § 650 (McKinney 1972). Many of the statutory rules for the New York State courts, contained in the New York Civil Practice Law and Rules, are dependent upon the actions of the sheriff for their enforcement. *E. g.,* N.Y.C.P.L.R. Arts. 52, 60, 61, 62, 70, 71; *see* N.Y. Judiciary Law § 750 *et seq.* In compensation for his many services the sheriff receives a fixed salary.

---

7. In an earlier decision, denying defendants' motion to decline jurisdiction or dismiss the complaint, this Court held that: (1) abstention was inappropriate; (2) the action was not barred by collateral estoppel; and (3) the New York State Attorney General was not an indispensable party. *Liquifin Aktiengesellschaft v. Brennan,* 383 F.Supp. 978 (S.D.N.Y.1974). Subsequently, on December 2, 1974, the Attorney General joined the action as an intervenor-defendant.

8. There is one New York City Sheriff whose province of responsibilities spans the five counties of New York City. It is the City Sheriff who levied upon Liquifin's assets pursuant to the order of attachment obtained by Ronson in the New York state court action.

All statutory fees collected by the sheriff in the course of his duties, including poundage, are the property of the county.[9]

*Constitutionality of Poundage*

Liquifin's first claim focuses on the constitutionality of the poundage system as applied to a nonresident whose use of the courts consisted solely of procuring the removal of a state action to federal court and obtaining a discharge of the attachment on its property. The complaint alleges that

The requirement imposed by the Sheriff and the City of New York, that Liquifin pay $75,625 for the release of its own funds, purportedly under color of New York law, was an arbitrary, capricious, unconscionable, and oppressive deprivation and taking of property without due process of law or just compensation, was an unreasonable interference with and undue burden upon access to the Courts of and in the State of New York, and violates Liquifin's rights under the Fourteenth Amendment to the Constitution of the United States and Article I, Section 6 of the Constitution of the State of New York, causing Liquifin to sustain damages in the amount of $75,625. Insofar as the CPLR justified the Sheriff's demands, it likewise violated the Fourteenth Amendment to the Constitution of the United States and Article I, Section 6 of the Constitution of the State of New York.

Amended Complaint ¶ 21, at 5.

Plaintiff claims that poundage is unconstitutional because it is a tax that bears no "fiscal relation to protection, opportunities and benefits given by the state." *Wisconsin v. J. C. Penney Co.*, 311 U.S. 435, 444, 61 S.Ct. 246, 250, 85 L.Ed. 267 (1940). The Court finds that poundage is a fee, not a tax, and further finds that, even as a tax, it would not be unconstitutional as applied to Liquifin under the facts of this case.

The Supreme Court has defined a tax as "an enforced contribution for the payment of public expenses." *Houck v. Little River Drainage Dist.*, 239 U.S. 254, 265, 36 S.Ct. 58, 61, 60 L.Ed. 266 (1915); accord, *Morton Salt Co. v. City of South Hutchinson*, 159 F.2d 897, 901–02 (10th Cir. 1947). In support of its argument that poundage is a tax, Liquifin points out that all poundage fees go into the general county or City fund without being earmarked as revenues for the sheriff's office. Plaintiff's assumption, however, that New York City's method of collecting and disbursing sheriff's fees makes poundage a general revenue-raising device, is clearly incorrect. The particular procedural mechanism by which funds generated by the judiciary are fed back into the judicial system does not change into a "tax" what historically has been deemed and treated as a fee.[10]

Poundage, like other fees and costs related to the court system, is exacted from those who use the services of the court and sheriff's office toward the goal of making the judiciary self-sustaining.[11] "The fact

---

**9.** When collected by the City Sheriff, such funds become the property of New York City.

**10.** In 1874 the New York Court of Appeals stated:

The right of a sheriff to fees is derived from and depends upon the statute. At common law he could not lawfully receive them. 10 Mod. 139. For the purpose of inducing diligence on the part of sheriffs in executing process, the statute of 29 Elizabeth, chapter 4, was passed, by which the taking of fees for executing certain process was impliedly permitted.

*Campbell v. Cothran*, 56 N.Y. 279, 281 (1874). The court's statement that sheriff fees were not permitted at common law may be somewhat misleading. Before the poundage system evolved, sheriffs were notorious for their practice of extorting those who needed their services. The poundage system served both to legalize the fees collected by the sheriff and to limit the amount that could be collected. *H. L. Hoffman & Co. v. Polarad Elecs. Corp.*, 26 Misc.2d 68, 69, 208 N.Y.S.2d 404, 405 (Sup.Ct. Nassau County 1960).

**11.** In *Travelers Insurance Co. v. Lawrence*, 355 F.Supp. 98, 100 (D.Ore.1973), *rev'd on other grounds*, 509 F.2d 83 (9th Cir. 1974), a case involving poundage collected by United States marshals, the court observed:

In foreclosures involving small sums of money, the marshal's service may not be

that the fees in question go into the City's general fund instead of being earmarked for support of the courts is of no significance, since the courts' support comes from the same general fund." *Manes v. Goldin*, 400 F.Supp. 23, 31 (E.D.N.Y.1975) (three-judge court, Judd, J., writing for the panel), *aff'd per curiam*, 423 U.S. 1068, 96 S.Ct. 851, 47 L.Ed.2d 80 (1976).

■ Even assuming, however, that poundage is a tax, the Court finds that it withstands constitutional scrutiny because it bears a direct relationship to services utilized by Liquifin. As observed by the United States Supreme Court, "[t]he simple but controlling question is whether the state has given anything for which it can ask return." *Wisconsin v. J. C. Penney Co.*, 311 U.S. 435, 444, 61 S.Ct. 246, 250, 85 L.Ed. 267 (1940).

Liquifin, of course, contends that it received no benefit from the state and certainly no benefit sufficient to warrant the exaction of $75,625 in poundage fees. In this regard, Liquifin erroneously claims that the event triggering poundage was Ronson's institution of a lawsuit against Liquifin by attaching Liquifin's monies on deposit with the Franklin National Bank. From this viewpoint, it would be Ronson and not Liquifin that used the court system and the sheriff's office, and Ronson would therefore be responsible for paying the sheriff the fees due him. What in fact triggered Liquifin's obligation to pay poundage was its use of the sheriff and the courts to obtain a discharge of the attachment and free $1,500,000 of its assets.

■ The sum exacted from Liquifin, $75,625, was concededly quite large and would be considered unreasonably so were the Court comparing this sum to the actual work expended by the sheriff in effectuating the discharge order. Compared, instead, to the benefit that accrued to Liquifin by virtue of the discharge—the release of $1,500,000 frozen at the Franklin National Bank—and to the legitimate state interest of supporting the judiciary, the poundage paid by Liquifin was not an arbitrary deprivation of its property without due process of law.

■ The New York Legislature, possessed of the widest discretion to formulate revenue policies, *see Kahn v. Shevin*, 416 U.S. 351, 355, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974), deemed the value of the property levied upon an appropriate barometer for the value of the benefit conferred. When the legislature's choice has been reasonable, the courts will not "substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws," *Ferguson v. Skrupa*, 372 U.S. 726, 730, 83 S.Ct. 1028, 1031, 10 L.Ed.2d 93 (1963), or "inject themselves . . . into the delicate processes of fiscal policy-making," *Wisconsin v. J. C. Penney Co., supra*, 311 U.S. at 445, 61 S.Ct. at 250.[12] The actual time or money expended by the sheriff in Liquifin's behalf is irrelevant. Liquifin paid for the power of the court through the agency of the sheriff to discharge the attachment that was freezing $1,500,000 of its funds.[13]

fully compensated for by the statutory fees, while in larger transactions the fee may help defray unreimbursed expenses incurred in the smaller cases.

**12.** For this reason, the opinion in *H. L. Hoffman & Co. v. Polarad Elecs. Corp.*, 26 Misc.2d 68, 69, 208 N.Y.S.2d 404, 405–06 (Sup.Ct. Nassau County 1960), in which Justice Meyer called for the abolition of the illogical and anachronistic poundage system, cannot affect the Court's decision in this case. After severely criticizing the system, Justice Meyer acknowledged his obligation to fix the sheriff his fee "[s]o long as the present statutory provisions remain on the books . . . ." 26 Misc.2d at 69, 208 N.Y.S.2d at 406.

**13.** Liquifin asserts two additional arguments in support of its claim that the New York poundage system is unconstitutional: (1) that it forecloses access to the courts; and (2) that it falls unevenly on persons similarly situated.

Plaintiff's first argument is patently frivolous. In that the poundage fee is a fixed percentage of the value of the attachment (in New York City, 5%), the fee cannot possibly operate to exclude persons from using the courts to obtain a discharge order. The Court also questions the standing of a huge international corporation like Liquifin, which was capable of making a multimillion dollar tender offer, to put forth such a challenge.

Finally, Liquifin claims that the recent Supreme Court decision in *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), supports its position that New York could not, consistent with due process, require it to pay poundage. Like Liquifin's other arguments, this too is premised upon the erroneous assumption that poundage is a tax subject to all appertaining constitutional limitations.

For a variety of reasons, the *Shaffer* opinion fails to support plaintiff's contentions. In *Shaffer,* the State of Delaware sought to assert its judicial power over nonresident defendants whose only contact with the state was stock ownership in a Delaware corporation. (The certificates themselves were not located in Delaware.) Procedurally, the plaintiff procured a sequestration order for this Delaware "property" in an attempt to obtain *quasi in rem* jurisdiction over the defendants. The Court held that, whether the brand of jurisdiction be *in personam, in rem,* or *quasi in rem,* "[t]he standard for determining whether an exercise of [such] jurisdiction . . . is consistent with the Due Process Clause is the minimum-contacts standard elucidated in *International Shoe* [*Co. v. Washington,* 326 U.S. 310, 317–19, 66 S.Ct. 154, 90 L.Ed. 95 (1945)]." 433 U.S. at 207, 97 S.Ct. at 2582.

Liquifin does not contest the power of the New York state court to exercise jurisdiction over it in the action instituted by Ronson. And, indeed, the subsequent settlement of that lawsuit operates to eradicate any defects that may have existed. Instead, Liquifin seeks to draw the analogy between the exercise of jurisdiction and the taxing power of a state.

■ Without commenting on the validity of the proffered analogy, the Court finds that Liquifin had sufficient contacts with New York State to subject it either to jurisdiction within the state or to the requirement to pay poundage. Unlike the stock certificates owned by the *Shaffer* defendants, the attached assets of Liquifin were physically present in New York. By bringing over $13,000,000 into the state, Liquifin availed itself of the state's protection over its property. Unlike the *Shaffer* defendants, whose motion to vacate the sequestration order met with failure in the Delaware courts, Liquifin, through use of the courts and the sheriff, was able to discharge the attachment and obtain the release of its funds. The Supreme Court held that Delaware could not assert jurisdiction over persons who had not " 'purposefully avail[ed themselves] of the privilege of conducting activities within the forum State,' *Hanson v. Denckla,* [357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)] in a way that would justify bringing them before a Delaware tribunal." *Shaffer v. Heitner, supra,* 433 U.S. at 216, 97 S.Ct. at 2586. Unlike the *Shaffer* defendants, Liquifin purposefully availed itself of the New York court and the City Sheriff to obtain a discharge of the attachment order. Having done so, New York is justified in demanding that Liquifin pay poundage.

*Interpretation of N.Y.C.P.L.R. § 8012(b)(3)*

Liquifin contends that, even if this Court upholds the constitutionality of New York's

---

Plaintiff next proposes that the poundage system denies the equal protection of the laws because other litigants serviced by the sheriff's office are not obliged to pay poundage. *See, e. g.,* N.Y.C.P.L.R. §§ 6111 (McKinney Cum.Supp. 1964–1977); 7106 (McKinney 1963); 8011(c) (McKinney Cum.Supp.1977–1978). As the prerequisite to an equal protection claim, however, the two groups treated differently must in fact be similarly situated. *Salsburg v. Maryland,* 346 U.S. 545, 551 & n. 6, 74 S.Ct. 280, 98 L.Ed. 281 (1954). Under the New York poundage system, all persons discharging a levy made pursuant to an order of attachment must pay poundage according to the statute. Other litigants using different services of the sheriff are not similarly situated to those persons.

Of course, any legislative classification must be reasonably related to a legitimate state concern in order to pass constitutional muster. Assuming, *arguendo,* and as plaintiff urges, that poundage is a tax, the legislature has the utmost discretion in drawing distinctions between groups, *San Antonio School Dist. v. Rodriguez,* 411 U.S. 1, 40–41, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), and complete equality and uniformity is not constitutionally required, *Kahn v. Shevin,* 416 U.S. 351, 356 n. 10, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974).

poundage system, the sheriff miscalculated the amount due by failing to apply the $1,000,000 limitation found in N.Y.C.P.L.R. § 8012(b)(3).[14] According to Liquifin,

> Since the "maximum" amount upon which poundage is computed if an order of attachment is "vacated or set aside" is $1,000,000, and since "the sheriff is entitled to the same poundage" when an order of attachment is "discharged by order of the court", the poundage which Section 8012(b)3 of the CPLR allowed the sheriff to demand was to be calculated on $1,000,000. Since, under CPLR §§ 8012(b)1 and 3, poundage in the City of New York is calculated as 5% of the amount levied upon, the maximum poundage which the Sheriff was authorized to demand was $50,000.00.

Amended Complaint ¶ 23, at 6.

The Court finds plaintiff's construction of the statute in question to be supported by neither logic nor legislative purpose, and therefore rejects it.

■ The circumstances giving rise to a "vacatur" differ significantly from the situation surrounding the "discharge" of an attachment. This distinction was articulated by the court in *Eastern Metal Products Corp. v. Landers of Arkansas, Inc.,* 188 F.Supp. 616, 620 (S.D.N.Y.1960) (Herlands, J.):

> A motion to vacate is generally made by a defendant to free his assets from attachment by reason of something that the plaintiff has not done or has done improperly or some failing in plaintiff's case.
>
> A motion for discharge is generally made by a defendant who concedes, at least *arguendo,* that the plaintiff has proceeded properly but offers to give plaintiff the equivalent of the attachment (e.g., a bond) in exchange for a release of the property.

In *Eastern Metal Products, supra,* the particular manner in which the attached funds were released ("vacatur" versus "discharge") provided the basis for the court's decision on the question whether plaintiff or defendant was liable for poundage. Because the vacation of an attachment presumes a defect either in the attachment or in plaintiff's case, the party who procured the vacated attachment order must bear the poundage. On the other hand, the discharge of an attachment presumes no such deficiency[15] and, therefore, the person obtaining the discharge order must pay poundage for the benefit he has received in the release of his property.

■ This critical distinction between a "vacatur" and a "discharge" is also manifested in New York's statutory calculation of the poundage fee. The poundage paid when an attachment has been vacated may be viewed as a penalty; New York saw fit to limit this penalty to $50,000 (or a different amount outside New York City). The poundage paid when an attachment has been discharged is in the nature of a fee for services rendered; since the value of those services increases along with the value of the attached property, the state saw no reason to set a ceiling on the poundage due in this situation.

■ Moreover, had the New York Legislature wanted the $1,000,000 limitation to apply to a discharged attachment, it could have done so when it amended the statute in 1943. 1943 N.Y. Laws, ch. 523, *amending* N.Y.C.P.A. § 1558(2). Prior to the 1943 amendment, the $1,000,000 ceiling applied solely when an order of attachment had been vacated or set aside.[16] *Stojowski v. Banque de France,* 294 N.Y. 135, 140, 61 N.E.2d 414 (1945). This was so even though the applicable provision read as follows:

---

14. See text preceding note 1 *supra.*

15. In fact, it has been observed that the discharge of an attachment assumes its validity. *Henry Stuart (Fabrics) Ltd. v. Jules Moskowitz & Co., Inc.,* 44 A.D.2d 798, 355 N.Y.S.2d 389 (1st Dep't 1974).

16. At that time, N.Y.C.P.A. § 1558(2) provided:

> If the action is settled either before or after judgment, the sheriff is entitled to poundage upon the value of the property attached, not exceeding the sum at which the settlement is made.

In all counties where a levy has been made under a warrant of attachment and the warrant of attachment is vacated or set aside by order of the court, the sheriff is entitled to poundage upon the value of the property attached not exceeding the amount specified in the warrant, and such additional compensation for his trouble and expense in taking possession and preserving the property as the judge issuing the warrant allows, and the judge or court may make an order requiring the party at whose instance the attachment is issued to pay the same to the sheriff; *and when said attachment has been otherwise discharged by order of the court, he shall be entitled to the poundage aforesaid* and to retain the property levied upon until his fees and poundage are paid by the party at whose instance the attachment is discharged; *provided that if a warrant of attachment is vacated or set aside by order of the court, the maximum amount upon which poundage shall be computed shall be one million dollars even though the value of the property attached shall exceed such amount.*

1941 N.Y. Laws, ch. 264, *amending* N.Y.C.P.A. § 1558(18) (emphasis added). Under the present statute, N.Y.C.P.L.R. § 8012(b)(3), "[t]he maximum amount upon which poundage shall be computed, if such a settlement is made or the order of attachment is vacated or set aside, is one million dollars." [17] Had the legislature wished the $1,000,000 ceiling to apply to a discharged attachment, it could easily have inserted the word "discharged" into the above-quoted sentence, either in 1943 or at some other time. New York's failure to have done so convinces the Court that no such ceiling applies upon the discharge of an attachment. *See* 8 Weinstein-Korn-Miller, *N.Y. Civil Practice* ¶ 8012.09.

*Constitutionality of N.Y.C.P.L.R. § 8012(b)(1)*

Liquifin's last argument focuses on the territorial distinctions created by N.Y.C.P.

L.R. § 8012(b)(1). Pursuant to this section, there is a 5% poundage fee for counties within New York City, while the fee for other New York counties is 5% of the first $250,000 attached and 3% of the remainder. According to Liquifin,

The requirement imposed . . . by the Sheriff and the City of New York that Liquifin pay $75,625, for the release of its own money, when Liquifin would have been required to pay approximately $35,000 if the levy had been made by a Sheriff outside the City of New York, was a denial of due process of law and of the equal protection of the laws. . . .

Amended Complaint ¶ 28, at 7.

■ The above claim is premised upon Liquifin's erroneous assumption that the sheriff's office is an entity independent of and separate from the court system rather than the integral part of the judiciary it historically has been and continues to be. Within the framework created by Liquifin, increased sheriff's fees in New York City would be constitutionally justified only if a revenue/expenditure comparison between sheriff's offices within and without the City showed a greater deficit for the New York City Sheriff than that experienced elsewhere. In this regard, the relevant fiscal data indicates that, prior to the poundage fee increase within New York City, the percentage of civil function costs covered by fees in the City Sheriff's Office approximated the average percentage in other parts of the State. Thus, according to Liquifin, the territorial distinction created by the 1972 amendment to N.Y.C.P.L.R. § 8012(b)(1), 1972 N.Y. Laws, ch. 735 § 3, is unconnected to a legitimate state interest and must be invalidated by this Court. *See, e.g., Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920).

Plaintiff concedes that the cost of court operations is higher in New York City than elsewhere in the state, but argues this find-

---

**17.** Section 8012(b)(3) of the New York Civil Practice Law and Rules combines the 1943 amendment to N.Y.C.P.A. § 1558(2) and the

1941 amendment to N.Y.C.P.A. § 1558(18). See, for historical purposes, 1958 N.Y. Laws, ch. 942, *amending* N.Y.C.P.A. § 1558(22).

ing is irrelevant to the issue at hand. The Court disagrees, based upon the common law, and now codified, function of the sheriff "as an officer of the court and conservator of the peace . . . ." N.Y. County Law § 650 (McKinney 1972).

Further support for the Court's finding that the sheriff is a part of the court system is found in the case of *Hanley v. City of New York,* 250 App.Div. 552, 295 N.Y.S. 1002 (1st Dep't), *aff'd per curiam,* 275 N.Y. 482, 11 N.E.2d 308 (1937). In that case the Sheriff of Bronx County claimed that New York City wrongfully reduced his salary by, *inter alia,* erroneously applying a law that authorized the City to reduce salaries of persons paid from the city treasury. The statute in question provided an exception in favor of the "salaries or compensation of any officer, employee or other person" in certain specified state courts, one of which was the supreme court within the First Judicial District. 1932 N.Y. Laws, ch. 637. The Appellate Division noted the holding in an earlier case that this exception immunized the Bronx County Clerk, who was clerk of the First Judicial District Supreme Court, from having his salary reduced under the statute. *Eberhard v. City of New York,* 163 Misc. 370, 295 N.Y.S. 1001 (Sup.Ct. Bronx County 1936). Comparing the plaintiff in *Eberhard* to the Bronx County Sheriff, the court concluded:

> There can be no doubt that the sheriff is also an officer of the court in the First judicial district and that he has duties too well known and too numerous to mention in connection with the administration of justice in the First Department. The sheriff, therefore, comes specifically under the exception of chapter 637.

*Hanley v. City of New York, supra,* 250 App.Div. at 554, 295 N.Y.S. at 1005.[18]

This Court's agreement that the sheriff's office is, indeed, a part of the judiciary places Liquifin's third claim squarely within the holding in *Manes v. Goldin,* 400 F.Supp. 23 (E.D.N.Y.1975) (three-judge court, Judd, J. writing for the panel), *aff'd per curiam,* 423 U.S. 1068, 96 S.Ct. 851, 47 L.Ed.2d 80 (1976). The *Manes* court upheld the constitutionality of the 1972 amendments to the New York Civil Practice Law and Rules, which provided higher fees and charges in the New York City counties than in other counties of the state for various court services. 1972 N.Y. Laws, chs. 734, 735; N.Y.C. P.L.R. Art. 80 (McKinney Cum.Supp.1977–1978). Although not specifically challenged in *Manes v. Goldin,* the poundage fee at issue herein was among the fees increased by virtue of the 1972 amendments.

▌ The *Manes* defendants justified the fee increase by stating the "indisputable [fact] that [the City's] budget is overburdened and it is less able to meet its needs than the rest of the state." *Manes v. Goldin, supra,* 400 F.Supp. at 29. The drafters hoped that the amendment would operate to "help New York City meet its share of the cost of running the courts." *Id.* Based upon this legitimate state interest, the three-judge court upheld the validity of the territorial distinction created by the 1972 amendments. The increased fees did not deny plaintiffs equal protection of the laws because, pursuant to the statute, "[a]ll persons suing in the courts in New York City pay the same fees whether they are citizens of New York City or of some other state." *Id.* at 30. *Compare Pennsylvania Bank & Trust Co. v. Hanisek,* 426 F.Supp. 410, 415–16 (W.D.Pa.1977). For the same reasons, the statute as amended was held not violative of due process.

## CONCLUSION

Accordingly, the Court finds that plaintiff's claims are without merit and hereby

---

18. *See Burke v. Kern,* 32 N.Y.S.2d 303, 309 (Sup.Ct. Kings County), *aff'd,* 263 App.Div. 834, 31 N.Y.S.2d 1015 (2d Dep't), *rev'd on other grounds,* 287 N.Y. 203, 38 N.E.2d 500 (1941); *compare Broschart v. City of New York,* 166 Misc. 515, 3 N.Y.S.2d 18, 20–21 (City Ct. Bronx County), *aff'd per curiam,* 255 App.Div. 776, 7 N.Y.S.2d 646 (1st Dep't 1938) (cashiers and clerks within sheriff's office not within exception, but deputy sheriff within exception), *and Albert v. City of New York,* 250 App.Div. 555, 295 N.Y.S. 1005 (1st Dep't 1937) (Bronx County Register not within exception).

grants judgment in favor of the defendants. The Court holds that New York's poundage system withstands constitutional scrutiny and that the City Sheriff's calculation of the poundage due from Liquifin was correct. The Court takes no position on the legislative question whether the poundage system, an outgrowth of sheriffs' abuses, should be abandoned as an historical relic and replaced by a broader-based method of raising revenues.

The foregoing constitute the findings of fact and conclusions of law of the Court pursuant to Fed.R.Civ.P. 52(a).

SO ORDERED.