GRANZOW, APPELLANT, *v.* BUREAU OF SUPPORT OF
MONTGOMERY COUNTY ET AL., APPELLEES.

[Cite as Granzow *v.* Montgomery Cty. Bur. of Support
(1990), 54 Ohio St. 3d 35.]

(No. 89-1031—Submitted May 29, 1990—Decided August 29, 1990.)

*Paul H. Granzow, pro se.*

*Lee C. Falke,* prosecuting attorney, and *Marcel N. Dezarn,* for appellees.

MOYER, C.J. In his proposition of law, plaintiff asserts that his constitutional rights to due process and equal protection have been violated because he is required to make alimony payments through the bureau of support, now the support enforcement agency, and because he also is required to remit a two percent fee on those payments. For the reasons that follow, we affirm the court of appeals' judgment that these requirements are constitutional.

The two percent charge was imposed on plaintiff pursuant to R.C. 2301.35, 2301.36, and Loc. R. 4.01 of the Court of Common Pleas of Montgomery County, Division of Domestic Relations. At the time of the divorce decree, R.C. 2301.36(A) provided that "[u]pon entering a support order, the court shall, upon the request of either party or the court's own motion or when required by court rule, require that support payments be made to the bureau of support as trustee for remittance to the person entitled to receive payments * * *." Furthermore, R.C. 2301.35(D) mandated that "[t]he bureau of support shall adopt a fee, to be paid by the obligor, for the administration of support orders. The fee shall not exceed two per cent of the amount to be collected under a support order, or one dollar per month, whichever is greater." Thus, the counties were authorized by the General Assembly to require support obligors to make support payments through a bureau of support and also to require those obligors to remit up to a two percent fee on those payments.

Pursuant to that authorization, Loc. R. 4.01 was adopted. At the time of the divorce decree, Loc. R. 4.01(b) provided that all "child support and/or alimony" obligors "shall make those payments through the Bureau of Support * * *. Those payments shall be made subject to the Bureau's rules and the current service charge, which service charge will be retained by the Bureau for its services rendered in processing the payments." At the time, a two percent "service charge" had been adopted. In the divorce decree, plaintiff was ordered to pay the two percent fee pursuant to this rule, as authorized by the then-existing Revised Code sections.

The pertinent provisions of R.C. 2301.35 and 2301.36 have been amended since the date of plaintiff's divorce decree. Because of those amendments, R.C. 2301.35(H)(1) now provides that a "child support enforcement agency," formerly the bureau of support, *must* collect two percent of the support payment, or one dollar per month, whichever is greater, from each support obligor. See Sub. H.B. No. 231 (142 Ohio Laws, Part II, 2635, 2687, 2943). Furthermore, R.C. 2301.36(A) now provides that all support payments must be processed through the child support enforcement agencies. See Am. Sub. H.B. No. 509 (141 Ohio Laws, Part III, 4725, 4735). Loc. R. 4.01 continues to impose such requirements on support obligors.

Plaintiff does not raise any issue regarding the retroactivity of the foregoing statutory amendments as applicable to his divorce decree. In any event, the post-1984 amendments impose the same requirements as those imposed on plaintiff by Loc. R. 4.01 at the time of the divorce decree. As a result, we may assume that the post-1984 amendments apply to plaintiff.

Employing a rational-basis analysis, the court of appeals concluded that plaintiff constitutionally may be required to pay alimony through a child

support enforcement agency, along with a two percent fee on those payments. Plaintiff contends that a stricter level of scrutiny should be applied, since these requirements constitute "[l]egislation that interferes with the personal relationship among family members * * *." Despite this contention, we agree with the court of appeals that no fundamental right or suspect classification is involved in this case. The foregoing requirements of Loc. R. 4.01, R.C. 2301.35, and 2301.36 concern only the economic aspects of the relationship between plaintiff and his ex-spouse. Furthermore, plaintiff's reliance on a "family" relationship in this instance is misplaced, since he is no longer related to his ex-spouse. Under these circumstances, we must apply a rational-basis level of scrutiny. For the purposes of equal protection, we must determine whether the requirements of Loc. R. 4.01, R.C. 2301.35, and 2301.36 bear a rational relationship to a legitimate governmental interest. See *Menefee* v. *Queen City Metro* (1990), 49 Ohio St. 3d 27, 29, 550 N.E. 2d 181, 182.

Plaintiff first objects to the requirement that he must pay alimony through the child support enforcement agency. In arguing that this "pay-through" requirement is unnecessary in his case, plaintiff cites the trial court's finding that he "is fully responsible for making his alimony payments without the intervention" of the child support enforcement agency. We have no reason to doubt the trial court's finding that plaintiff is a responsible obligor. In fact, his circumstances demonstrate the unfairness of the law to those who are able to and who in fact make timely support payments. However, this unfairness does not rise to a level that causes us to hold that the governmental action here is unconstitutional. There are legitimate governmental interests served by the pay-through requirement. This requirement ensures that orderly records will be kept of each support payment, thereby apprising government officials of the status of each case. See *Brueggeman* v. *Brueggeman* (1987), 34 Ohio App. 3d 333, 335, 518 N.E. 2d 586, 588. Furthermore, the pay-through requirement should effectively eliminate most litigation by the parties concerning the payment status of their support orders. Under a rational-basis analysis, these legitimate governmental interests provide adequate justification for the pay-through requirements of Loc. R. 4.01 and R.C. 2301.36.

Despite these legitimate interests, plaintiff asserts that the pay-through requirement "create[s] an irrebuttable presumption that any person who obtains a Decree of Divorce will default in the payment of support and must pay to a state collection agency." He cites *Stanley* v. *Illinois* (1972), 405 U.S. 645, in support of his claim that such presumptions violate due process.

Plaintiff's equitable argument is meritless as a point of law. So-called "irrebuttable presumptions" are invalid only if the fact presumed is an essential constitutional or statutory predicate to government action. See *Williams* v. *Dollison* (1980), 62 Ohio St. 2d 297, 299, 16 O.O. 3d 350, 351, 405 N.E. 2d 714, 716 (due process confers the right to controvert "every material fact"). In *Stanley,* for example, the fact improperly presumed was the father's lack of parental fitness. This fact was essential because he could not be denied his parental rights without a hearing as to his lack of fitness.

In this case, the question of whether plaintiff has defaulted or will default is not an essential predicate. The pay-through requirement may be imposed without regard to whether

plaintiff has defaulted or will default on his support payments. In other words, there is no constitutional or statutory right to a factual hearing on default before the pay-through requirement may be imposed on plaintiff. The pay-through requirements of Loc. R. 4.01 and R.C. 2301.36(A) are constitutional.[1]

Plaintiff next objects to the requirement that he must remit a two percent fee to the child support enforcement agency for each payment processed by it. He contends that the child support enforcement agency can charge a "fee" based only on its actual costs in administering his payments. He argues that his monthly fee of $170 greatly exceeds those costs, and that the fee therefore is an arbitrary "tax" designed to raise revenue.

We disagree with plaintiff's assertion that the two percent charge is a tax rather than a fee. The two percent charge was correctly characterized by the court of appeals as a poundage fee. Poundage "historically has been deemed and treated as a fee." *Liquifin Aktiengesellschaft* v. *Brennan* (S.D.N.Y. 1978), 446 F. Supp. 914, 919 (statutory sheriff's fees held constitutional). The purpose of poundage has been described " 'as a compensation to the sheriff for the risk incurred in handling and disbursing money actually received by him in his official capacity.' " *Citizens Natl. Bank of Norwalk* v. *Norman* (1987), 29 Ohio St. 3d 62, 63, 29 OBR 444, 445, 505 N.E. 2d 960, 961, quoting *Major* v. *Internatl. Coal Co.* (1907), 76 Ohio St. 200, 209, 81 N.E. 240, 242.

It must be conceded that the two percent charge paid by plaintiff cannot be justified as a fee solely by reference to the actual costs of recording and processing his alimony payments. Previously, this court has indicated that a "fee" is in fact a "tax" if it exceeds the "cost and expense" to government of providing the service in question. *State, ex rel. Gordon,* v. *Rhodes* (1952), 158 Ohio St. 129, 48 O.O. 64, 107 N.E. 2d 206, paragraph two of the syllabus. See *Cincinnati* v. *Roettinger* (1922), 105 Ohio St. 145, 154, 137 N.E. 6, 8. However, the type of fees charged in those cases, and in cases cited by plaintiff, such as *State, ex rel. Waterbury Development Co.,* v. *Witten* (1978), 54 Ohio St. 2d 412, 8 O.O. 3d 410, 377 N.E. 2d 505, must be distinguished from the poundage fee charged plaintiff in this case. Unlike the fees charged in those cases, the poundage fee serves the additional purpose of compensating officials for the risk of "handling" and disbursing money. Because this risk necessarily increases as the amount of money handled increases, a fee based on the amount of support payments is justifiable. In light of the purpose of poundage, the two percent charge is reasonably related to the costs and risks of processing plaintiff's support payments. It is therefore a valid fee and not a tax.

In arguing that the two percent charge is a revenue-raising "tax," plaintiff emphasizes that R.C. 2301.35, in amendments effective from October 5, 1987 to July 1, 1989, stated that the two percent charge was imposed "to provide funds for that part of the cost of its program for support enforce-

---

[1] Plaintiff also claims that R.C. 2301.36, as amended, is unconstitutional because it allegedly creates an irrebuttable presumption that direct payments to obligees are gifts. This argument was not raised in the court of appeals and therefore is not properly before us. *State* v. *Williams* (1977), 51 Ohio St. 2d 112, 5 O.O. 3d 98, 364 N.E. 2d 1364, death penalty vacated (1978), 438 U.S. 911, paragraph two of the syllabus.

ment that is not paid for by federal funds." See Sub. H.B. No. 231 (142 Ohio Laws, Part II, 2635, 2687-2688, 2943-2944) and Am. Sub. H.B. No. 111 (143 Ohio Laws ___, ___). R.C. 2301.35(H)(1) now provides only that "[n]o moneys received by an agency pursuant to division (H)(1) of this section shall be used for any purpose other than the administration of its program of support enforcement." In our view, the foregoing language merely indicates the destination of funds generated from poundage. This language does not convert what is otherwise a fee into a tax. See *Liquifin, supra,* at 919-920. The particular method by which poundage fees are accounted for and spent is irrelevant to the question of whether the poundage fees, as collected, cover or exceed the costs and risks to the government of providing the service in question. It should be noted that this case does not involve the diversion of poundage funds to any improper purpose. Cf. *Roettinger, supra.*

Even if the two percent charge were construed to be a tax, we would find it constitutional. In regard to state taxation, the controlling question under due process "is whether the state has given anything for which it can ask return." *Wisconsin* v. *J. C. Penney Co.* (1940), 311 U.S. 435, 444. In this instance, plaintiff is incorrect to focus solely on the administrative costs of the agency processing his payments. By processing and maintaining records of plaintiff's payments, the child support enforcement agency has rendered a benefit, albeit unwanted, to plaintiff. Plaintiff has benefited in that his payments have been verified and recorded, in case of any future dispute by his ex-spouse about those payments. Because plaintiff's support payments are greater than those of other obligors, this benefit of verification necessarily has a greater value to

him. Thus, in setting the "tax" to be charged for this benefit, the General Assembly and the domestic relations court could rationally deem the amount of support payments "an appropriate barometer for the value of the benefit conferred." *Liquifin, supra,* at 920. Furthermore, for purposes of equal protection, since all obligors receive this benefit, it is rational that all obligors are required to pay such a tax, regardless of whether they pay child support or alimony, and regardless of whether they have defaulted.

The involuntary nature of the two percent poundage fee in our view does not affect its constitutionality. As stated *supra,* there are legitimate governmental interests served by imposing a pay-through requirement on all support obligors. Once it was determined that all obligors must use the services of the child support enforcement agencies, a reasonable amount could be charged for those services. In relation to the benefit conferred and the costs and risks incurred by the child support enforcement agency in processing plaintiff's payments, the two percent fee is reasonable. Whether it is judged to be a fee or a tax, the two percent charge imposed by R.C. 2301.35(H)(1) and Loc. R. 4.01 does not violate due process or equal protection.

Plaintiff contends that the two percent charge violates Section 5, Article XII of the Ohio Constitution. However, he makes no specific argument in this regard. We assume that plaintiff is contending only that the two percent charge violates the provision that "[n]o tax shall be levied, except in pursuance of law * * *." We conclude that the two percent charge is not a tax and is not in violation of law.

Finally, plaintiff argues that Section 302.57, Title 45, C.F.R., imposes a limit on the fee that may be charged

against him. The trial court correctly found, however, that Section 302.57 "does not apply to the collection of alimony only, which is what * * * [plaintiff] pays." The inapplicability of this regulation is evident in its language, which refers only to "parents." See, also, Section 666(c), Title 42, U.S. Code. Spousal support orders are encompassed in Part 302, Title 45, C.F.R., only if a child is also involved. See Section 652(a)(1), Title 42, U.S. Code (Department of Health and Human Services shall "establish such standards for State programs for * * * obtaining child support and support for the spouse (or former spouse) with whom the absent parent's child is living * * *"). Section 302.57 has no applicability to the two percent fee imposed on plaintiff.

In conclusion, we hold that the rights of due process and equal protection are not violated by R.C. 2301.35(H)(1), 2301.36(A), and Loc. R. 4.01 of the Court of Common Pleas of Montgomery County, Division of Domestic Relations, the provisions of which require that support obligors make payments through a child support enforcement agency and also require a two percent fee on those payments.

Accordingly, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

SWEENEY, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.

HOLMES, J., concurs separately.

HOLMES, J., concurring. I am in agreement with the majority that the claims of the appellant do not rise to an unconstitutional treatment. The state may lawfully enact such legislation in the reasonable consideration of county support department needs for uniformity of handling and enforcing support payments, in addition to the appropriate need to fund such collections, accounting and distributions. In this sense, I must agree that the statutory provisions reviewed here are reasonable and necessary. However, where it is found, as in this instance, that the payor is willing to pay, and is completely capable of paying, such ordered sum directly to the spouse, the law should accommodate such individual action, and in so doing allow the payor to avoid the additional expenses involved to him by such poundage assessment.

I join the majority herein as to the lawfulness of this provision; however, I am firmly convinced that this law is an unreasonable one as it applies to persons such as the appellant herein, and should be reviewed by the General Assembly as it would relate to such instances.