[Cite as *Osborne v. Osborne*, 2015-Ohio-3382.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

KIMBERLY OSBORNE, nka
WINHOVER

    *Plaintiff-Appellee*

v.

JAMIE OSBORNE

    *Defendant-Appellee*

:
:
:
:
:
:
:
:
:
:
:
:

Appellate Case No. 26624

Trial Court Case No. 1999-DM-842

(Appeal from Domestic Relations Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 21st day of August, 2015.

. . . . . . . . . .

KIMBERLY WINHOVER, 6740 Chambersburg Road, Huber Heights, Ohio 45424
    Plaintiff-Appellee-Pro Se

JAMIE OSBORNE, 6413 Hemingway Road, Huber Heights, Ohio 45424
    Defendant-Appellee-Pro Se

TRAVIS E. TINKHAM, Atty. Reg. No. 0089546, Montgomery County Support
Enforcement Agency, 14 West Fourth Street, P.O. Box 8744, Dayton, Ohio 45401
    Attorney for Appellant-MCCSEA

. . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** Appellant, Montgomery County Child Support Enforcement Agency ("MCCSEA"), appeals from a judgment overruling MCCSEA's objections to a magistrate's ruling. The magistrate had held that MCCSEA was not entitled to collect an additional two percent in processing charges on a processing fee arrearage of $301.91 owed to MCCSEA.

**{¶ 2}** MCCSEA contends that the trial court abused its discretion and erred in refusing to allow collection of the processing fee. We conclude that the trial court erred in refusing to let MCCSEA collect the additional two percent processing charge on the processing fee arrearage. The statutes pertaining to assessment of processing charges are ambiguous, and prior interpretation, which allowed collection of these additional fees, has not been disturbed by the legislature. Accordingly, the judgment of the trial court will be reversed, and this cause will be remanded for further proceedings.

I. Facts and Course of Proceedings

**{¶ 3}** This case has a long history. In January 2000, a final judgment and decree of dissolution was filed. At that time, the parties agreed to shared parenting of their two children, B.O. and A.O., who were ages 7 and 5, respectively. However, no support was ordered. The shared parenting order was terminated in June 2001, and custody was given to the father, Jamie Osborne. Kimberly Osborne n/k/a Winhover was not ordered to pay support until April 2003, at which time she agreed to pay minimum support of $50 per month per child.[1] The support order included a two percent processing charge. In

---

[1] For purposes of convenience, we will refer to Kimberly and Jamie by their first names.

August 2003, MCCSEA added an administrative default order, which required Kimberly to pay $22 per month on an arrearage in addition to her regular payment.

{¶ 4} Over the next several years, a series of motions for contempt were filed, and various contempt and review hearings were held, based on Kimberly's failure to pay. At times when Kimberly was employed, withholding notices were issued. For example, in October 2006, a notice to withhold $124.44 per month was issued, representing $50 per month per child for two children and $22 per month on the arrearage, plus a two percent Support Enforcement Agency ("SEA") administrative fee ($2.44) on the total payment amount of $122.

{¶ 5} In May 2010, B.O. was ordered emancipated, effective June 10, 2010. According to the records, Kimberly's arrearage as of March 31, 2010 was about $1,180. MCCSEA was ordered to report to the court when the arrearage had been paid in full.

{¶ 6} Another notice of emancipation was filed in February 2013, with respect to A.O. At that time, the unaudited arrearage was about $3,014. An agreed order was filed in late February 2013, stating that A.O. had been emancipated on September 3, 2012. The agreed order also terminated child support, effective September 3, 2012, and ordered Kimberly to pay $100 monthly on the existing arrearage.

{¶ 7} Another review hearing was held in August 2013, at which time Kimberly indicated that she expected the release of an intercepted tax refund of $1,371 in six months, which, with her additional monthly payments, would pay the account in full. The matter was set for further review on February 28, 2014.

{¶ 8} On March 3, 2014, the magistrate filed an order indicating that an involuntary payment had been made on the child support account that had reduced the child support

arrearage to zero. However, an administrative fee arrearage of more than $200 was still owed to MCCSEA. The magistrate ordered Kimberly to pay $25 per month on the fee arrearage until paid in full. In addition, the magistrate set a review hearing for August 29, 2014. The order also stated that all payments of support should include the two percent SEA fee.

{¶ 9} When the review hearing was held on August 29, 2014, the child support account had an arrearage balance of zero, but the fee arrearage owed to MCCSEA was $301.19. At that time, the magistrate ordered Kimberly to continue paying $25 per month on the administrative fees owed. However, the magistrate also ordered that Kimberly would not be required to pay a two percent processing charge on the administrative fees that were owed.

{¶ 10} On October 7, 2014, MCCSEA filed a praecipe for a transcript of the hearing on August 29, 2014; objections to the magistrate's decision; and a motion for leave to file objections out of time, since the objections to the magistrate's decision had been due by September 18, 2014. The trial court granted the request. No transcript was filed, because it was not requested, and a transcript, therefore, was not available to the trial court.

{¶ 11} Subsequently, on February 18, 2015, the trial court filed a decision overruling MCCSEA's objections and refusing to apply a two percent processing charge to collection of the administrative fee arrearage. MCCSEA now appeals from the judgment of the trial court.

II. Alleged Error in Refusing to Include the Two Percent Processing Fee

{¶ 12} MCCSEA's sole assignment of error states that:

The Trial Court Abused Its Discretion and Committed an Error of Law by Not Including the Two Percent Processing Charge Required by R.C. 3119.27(A) When Modifying Repayment of the Arrearage on a Support Order Consisting of Unpaid Processing Charges Accumulated Over the Life of the Support Order.

{¶ 13} Under this assignment of error, MCCSEA contends that R.C. 3119.27(A) mandates that a two percent processing fee be imposed on all support orders and that R.C. 3119.28 applies those charges to payments of both current support and support arrearages. MCCSEA further contends that the processing charge arrearage in this case was generated over the life of the support order and was part of the arrearage on the support order. MCCSEA, therefore, argues that it should be permitted to impose a two percent processing fee on its collection of the administrative fee arrearage. Kimberly did not file a brief responding to MCCSEA's arguments.

{¶ 14} As an initial matter, we note that the magistrate's order did not contain any reasons for the decision. Furthermore, the trial court's decision only states that the additional processing charge is not within the meaning of R.C. 3119.27, without discussing why the court reached this conclusion.

{¶ 15} The first of the two statutes cited by MCCSEA, R.C. 3119.27, provides, in pertinent part, that:

(A) A court that issues or modifies a court support order, or an administrative agency that issues or modifies an administrative child support order, shall impose on the obligor under the support order a

processing charge that is the greater of two per cent of the support payment to be collected under a support order or one dollar per month. No court or agency may call the charge a poundage fee.

{¶ 16} The second statute, R.C. 3119.28, provides that:

(A) As used in this section, "current support payment" means the amount of support due an obligee that an obligor is required to pay in a particular payment for the current month as specified in a support order. "Current support payment" does not include payments on arrearages under the support order.

(B) The obligor shall pay the amount imposed pursuant to section 3119.27 of the Revised Code with every current support payment, and with every payment on arrearages.

{¶ 17} " 'The object of judicial investigation in the construction of a statute is to ascertain and give effect to the intent of the law-making body which enacted it.' " *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, ¶ 11, quoting *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph one of the syllabus. We "may engage in statutory interpretation when the statute under review is ambiguous." *Id.*

{¶ 18} The Supreme Court of Ohio further observed in *Hairston* that:

"But the intent of the law-makers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation. The question is not what did the general assembly intend to enact, but what is the meaning of

that which it did enact. That body should be held to mean what it has plainly expressed, and hence no room is left for construction."

*Hairston* at ¶ 12, quoting *Slingluff* at paragraph two of the syllabus.

{¶ 19} In *Tuscarawas Cty. Child Support Enforcement Agency (CSEA) v. Burger*, 5th Dist. Tuscarawas Nos. 2000AP120093, 2000AP110075, 2000AP110088, 2000AP110074, 2000AP110087, 2000AP110078, 2000AP110086, 2000AP110076, 2000AP110089, 2001 WL 1169585 (Sept. 26, 2001), the court of appeals considered the meaning of R.C. 2301.35, which was the predecessor statute to R.C. 3119.27 and R.C. 3119.28. *Compare* H.B. 294, 2000 Ohio Laws 160, *with* S.B. 180, 2000 Ohio Laws 291 (repealing R.C. 2301.35 and enacting R.C. 3119.27 and 3119.28). The revised statutes were in effect as of March 22, 2001, but were not considered in *Burger,* which was issued several months later.

{¶ 20} The relevant wording in R.C. 2301.35 was not changed when R.C. 3119.27 and R.C. 3119.28 were enacted. Instead, the content of the relevant parts of the prior statute was split between the two statutes. Prior to repeal, R.C. 2301.35(G)(1) stated that:

> A court or administrative agency that issues or modifies a support order shall impose a processing charge that is the greater of two per cent of the support payment to be collected under a support order or one dollar per month on the obligor under the support order. The obligor shall pay the amount with every current support payment, and with every payment on arrearages. No court or agency may call the charge a poundage fee.

H.B. 294, 2000 Ohio Laws 160.

**{¶ 21}** In addition, R.C. 2301.35(J)(1) stated that:

As used in this section, "current support payment" means the amount of support due an obligee that an obligor is required to pay in a particular payment for the current month as specified in a support order. "Current support payment" does not include payments on arrearages under the support order.

*Id.* After the revisions, part of R.C. 2301.35(G)(1) was codified as R.C. 3119.27. Part of R.C. 2301.35(G)(1) was codified as R.C. 3119.28(B), and R.C. 2301.35(J)(1) was codified as R.C. 3119.28(A). *See* S.B. 180, 2000 Ohio Laws 291. However, as was noted, the content in R.C. 3119.27 and R.C. 3119.28 remained essentially the same as the prior statute.[2] As a result, the statutes considered in *Burger* and those in effect today have the same content.

**{¶ 22}** In *Burger*, the trial court had held that the child support enforcement agency ("CSEA") "could not collect processing fees on any support arrearage payments, *including those attributable to prior unpaid processing fees.*" (Emphasis added.) *Burger,* 2001 WL 1169585, at *1. In this regard, the trial court stated that:

Thus, the Court finds that although the Revised Code gives the court and administrative agency authority to account for past due processing fees, neither the Revised Code nor the O.A.C. authorizes the collection of an additional processing fee on the past due processing fee. The Court finds that the law does not allow for cumulative processing fees to be charged

---

[2] R.C. 3119.27 was amended again in 2007, and subsections (B) and (C) were added. This resulted in the pertinent language being moved to subsection (A). Again, however, the content of that part of the statute was not changed. *See* Am.Sub.H.B. 119, 2007 Ohio Laws 15.

upon past due support. The accumulation of processing fees could result in an unconscionable, exponential obligation for which there is no clear legislative intent and which this court will not endorse.

*Id.*

{¶ 23} However, two members of the Fifth District Court of Appeals disagreed with the trial court. Specifically, the majority stated that:

Following its review of various provisions in the Ohio Revised Code and Ohio Administrative Code, the trial court found that it could not locate a definition of "arrearages" as used in 2301.35(G)(1). However, the court concluded that "[t]he obligor must pay the processing charge on the support, whether the support is paid on time (current) or paid late (past-due);" but that no authority exists for assessing a "second" processing fee on the support amount if paid past-due. Judgment Entries, varying pagination. Courts are guided by the axiom that statutes should be construed to avoid unreasonable consequences. *See State ex rel. Dispatch Printing v. Wells* (1985), 18 Ohio St.3d 382, 384. The trial court's reading of R.C. 2301.35(G)(1) effectively altered the second sentence from conjunctive to disjunctive; i.e., the phrase "and with every payment on arrearages" was essentially construed as "or with every payment on arrearages," (if not previously paid with current support.) * * * Additionally, the trial court effectively read "two per cent of the support payment" in the first sentence of R.C. 2301.35(G)(1) as referring to a current support order only. In construing a statute, a court may not add or

delete words. *State ex rel. Sears, Roebuck & Co. v. Indus. Comm.* (1990), 52 Ohio St.3d 144, 148; *State v. Hughes* (1999), 86 Ohio St.3d 424, 427. As CSEA points out, the aforementioned second sentence of R.C. 2301.35(G)(1) was originally added to the statute, via amendment, on March 29, 1988. Although the second sentence has from its onset contained the phrase "current support," the General Assembly never chose to amend "support payment" or "support order" from the first sentence in like fashion. Indeed, at least one appellate court has held that a "child support order" includes an order requiring periodic payments for past-due support. *See Treadway v. Ballew* (Oct. 7, 1998), Summit App.No. 18984, unreported. Furthermore, at the time of the cases sub judice, the Ohio Department of Job and Family Services ("ODJFS") was statutorily charged in R.C. 5101.325(B)(1) with maintaining an account of unpaid processing fees for every child support obligor: ["](B)(1) The division [of child support in the department of job and family services] shall collect the charge imposed on the obligor under the support order pursuant to division (G)(1) of section 2301.35 of the Revised Code. If an obligor fails to pay the required amount with each current support payment due in increments specified under the support order, the division shall maintain a separate arrearage account of that amount for that obligor. * * * .["]

*Burger,* 2001 WL 1169585, at *2.

{¶ 24} The majority went on to state that:

Reading R.C. 5101.325(B)(1) and R.C. 2301.35(G)(1) in pari

materia, we cannot accept the trial court's restrictive interpretation of the collection of processing fees. An obligor who fails to pay current support remains statutorily liable for the corresponding accumulation of unpaid processing fees on said support; otherwise, the mandate of R.C. 5101.325(B)(1) is superfluous. When the obligor later makes an arrearage payment, we find no basis to bar CSEA from assessing thereon a separate processing fee under R.C. 2301.35(G)(1). The purpose of a processing fee is to compensate officials for the risk of handling and disbursing money. *See Granzow v. Bureau of Support* (1990), 54 Ohio St.3d 35, 38. This risk is multiplied when a non-paying obligor forces CSEA to use its resources and personnel to keep a case open until the arrearage is exhausted, even if years after emancipation of the subject child.

*Burger* at *2.[3]

{¶ 25} The majority also relied on ODJFS's interpretation of the statute, which was that after centralized implementation of the Support Enforcement Tracking System, all Ohio counties were charging a two percent fee on both current and arrearage payments. *Id.* at *3.

{¶ 26} In contrast, the dissent concluded that the first line of R.C. 2301.35(G)(1) defined the authority of the court or administrative agency to impose a processing charge. *Id.* (Edwards, J., dissenting). The dissent read the second line, i.e., "[t]he obligor shall pay the amount with every current support payment, and with every payment on

---

[3]The content of R.C. 5101.325(B)(1) is currently codified in R.C. 3121.56 and R.C. 3121.58, with no relevant change in wording. *Compare* S.B. 245, 2000 Ohio Laws 148, *with* S.B. 180, 2000 Ohio Laws 291.

arrearages," as conveying no authority to impose processing charges. Instead, the dissent interpreted this line as setting forth "the obligor's responsibility to pay the fee and when to pay it." *Id.*

{¶ 27} The dissent went on to note that:

Therefore, the analysis of how to calculate the processing fee must center on the first sentence of R.C. 2301.35(G)(1). That sentence states that the processing charge shall be (in most cases) two per cent of the support payment to be collected under a support order. (Emphasis added.) The issue is whether the "support payment to be collected under a support order" includes an order to pay on arrearages as well as an order to pay current support. An example will illustrate the difference in outcome. If support is $200.00 per month, the processing fee is $4.00. That fee is imposed, per the statute, even if the current support payment is not paid by the obligor. Therefore, if the obligor fails to pay the $200.00, the obligor now owes $200.00 plus $4.00. (The $4.00 is segregated and an accounting kept. It is clearly not support.) If the court now orders the obligor to pay off the $200.00 support arrearage in four monthly installments of $50.00 each, then the obligor should pay $200.00 plus $50.00 per month for four months. If the processing fee is imposed on the arrearage amount, pursuant to the argument that the arrearage order is a support payment to be collected under a support order, then the processing fee would be $5 .00 in each of the four months. The obligor would also still owe the original $4.00 processing fee. If the processing fee is only imposed on the current

support payment, the obligor would owe $4.00 in processing fees for the first missed support payment and a $4.00 processing fee in each of the months that the obligor was ordered to pay $200.00 in support and $50.00 in arrearages. In other words, the processing fee of two per cent would only ever be imposed on the current support payment. It would be collected when the obligor actually made a payment. Under this interpretation of the statute, the obligor would only need to pay a two per cent fee with every payment, whether it be for current support or for arrearages, to pay off the processing fees. In the example set forth above, that would mean that the obligor would pay a $4.00 processing charge on his/her $200.00 current support payment and a $1.00 processing charge on his/her $50.00 arrearage payment. The $1.00 processing charge on the arrearage payment would be credited against the $4.00 processing charge arrearage that was imposed when the $200.00 current payment was not made. I would find that the correct interpretation of R.C. 2301.35(G)(1) is that the two per cent can only be imposed on the current support payment and not on the arrearage payment. I reach this conclusion by reading R.C. 2301.35(G)(1) in pari materia with the former R.C. 5101.325(B)(1). R.C. 5101.325(B)(1) charged the Ohio Department of Job and Family Services with maintaining an account for unpaid processing fees for each obligor: ["](B)(1) The division [of child support in the department of job and family services] shall collect the charge imposed on the obligor under the support order pursuant to division (G)(1) of section 2301.35 of the Revised Codes. If

an obligor fails to pay the required amount with each current support payment due in increments specified under the support order, the division shall maintain a separate arrearage account of that amount for that obligor...["].

*Burger*, 2001 WL 1169585, at *3 (Edwards, J., dissenting).

{¶ 28} The dissent also relied on the fact that under R.C. 2301.35(J)(1), " 'current support payment,' as used in that section, means the amount of support due an obligee that an obligor is required to pay in a particular payment for the current month as specified in a support order. And, specifically, 'current support payment' does not include payments on arrearages under the support order." *Id.* at *4.[4]

{¶ 29} Neither interpretation in *Burger* is unreasonable. The Supreme Court of Ohio has indicated that "[a] statute is ambiguous when its language is subject to more than one reasonable interpretation." (Citation omitted.) *Lang v. Dir., Ohio Dept. of Job & Family Servs.*, 134 Ohio St.3d 296, 2012-Ohio-5366, 982 N.E.2d 636, ¶ 14.

{¶ 30} "In determining legislative intent when faced with an ambiguous statute, the court may consider several factors, including the object sought to be obtained, circumstances under which the statute was enacted, the legislative history, and the consequences of a particular construction." *Bailey v. Republic Engineered Steels, Inc.*, 91 Ohio St.3d 38, 40, 741 N.E.2d 121 (2001), citing R.C. 1.49 and *State v. Jordan*, 89 Ohio St.3d 488, 492, 733 N.E.2d 601 (2000).

{¶ 31} The established public policy in Ohio is "that a parent must provide for his or

---

[4]As was noted previously, the statutory revisions in S.B. 180, 2000 Ohio Laws 291, moved the content of R.C. 2301.35(J)(1) to R.C. 3119.28(A). However, the wording of the statute remained the same.

her child financially." *J.F. v. D.B.*, 116 Ohio St.3d 363, 2007-Ohio-6750, 879 N.E.2d 740, ¶ 15, citing R.C. 3103.031 (Cupp, J., dissenting with respect to decision that parental rights may be waived in gestational-surrogacy-contracts). "Strict enforcement of child support obligations 'clearly serves the public purpose of advancing the welfare of children by enforcing a child's right to be supported by his parents, fostering parental responsibility and parental involvement with the child, and preventing the child and custodial parent from having to turn to welfare.' " *State v. Collins*, 89 Ohio St.3d 524, 534, 733 N.E.2d 1118 (2000), quoting *In re Lappe*, 176 Ill.2d 414, 431, 680 N.E.2d 380 (1997) (Lundberg Stratton, J., concurring in part and dissenting in part regarding court's refusal to apply strict liability to criminal offense of failure to support). *Accord Mills v. Mills*, 5th Dist. Stark No. CA-8890, 1992 WL 349893, *1 (Nov. 9, 1992) (noting "strong public policy underlying the enforcement of child support obligations"). *See also Harbour v. Ridgeway*, 10th Dist. Franklin No. 04AP-350, 2005-Ohio-2643, ¶ 34 (stressing state's "public policy interest in parents fulfilling their obligation to provide support for their children").

{¶ 32} Furthermore, "Ohio has a direct financial interest in the enforcement of child support orders" because families receiving welfare assistance are "required to assign their interests in child support to the state." *Cramer v. Petrie*, 70 Ohio St.3d 131, 134, 637 N.E.2d 882 (1994). *See also, e.g., Lorain Cty. Child Enforcement Agency v. Burnett*, 9th Dist. Lorain No. 09CA009566, 2009-Ohio-5160, ¶ 12, quoting R.C. 5107.20 (" '[p]articipation in Ohio works first constitutes an assignment to the department of job and family services of any rights members of an assistance group have to support from any other person * * *.' ").

{¶ 33} Courts have also "long * * * recognized that an administrative agency is

entitled to compensation for assuming the risks associated with the handling and disbursement of funds in proportion to the amount of those funds and that a two percent fee is reasonable." *Curran v. Kelly*, 9th Dist. Medina No. 10CA0139-M, 2012-Ohio-218, ¶ 13, citing *Granzow*, 54 Ohio St.3d at 38, 560 N.E.2d 1307. The risk and costs associated with collecting support are evident in the case before us, as MCCSEA has been involved in numerous contempt hearings over the course of many years, in an attempt to obtain a minimal amount of child support from Kimberly.

{¶ 34} With respect to legislative history, we note that the *Burger* decision was not appealed further, and since 2001, no relevant changes have been made to any of the statutes considered in *Burger*. *See* current R.C. 3119.27, R.C. 3119.28, R.C. 3119.56, and R.C. 3119.58. We must, therefore, assume that the legislature does not disagree with the majority decision in *Burger*.

{¶ 35} Accordingly, we agree with MCCSEA that the trial court erred in refusing to permit a two percent processing charge to be applied to the payment on the administrative fee arrearage. MCCSEA's sole assignment of error, therefore, is sustained.

### III. Conclusion

{¶ 36} MCCSEA's sole assignment of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings.

. . . . . . . . . . . . .

FAIN, J. and DONOVAN, J., concur.

Copies mailed to:

Kimberly Winhover
Jamie Osborne
Travis E. Tinkham
Hon. Timothy D. Wood